IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JAMES BARNES,

              Plaintiff,

      v.

WILLIAM EDWARDS, et al.,

              Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 13-4239 (JBS-KMW)

**OPINION**

APPEARANCES:

JAMES GREENBERG, ESQ.
JOHN P. KAHN, ESQ.
Duane Morris, LLP
1940 Route 70 East, Suite 200
Cherry Hill, New Jersey 08003
Attorneys for Plaintiff James Barnes

CHRISTOPHER C. JOSEPHSON, DEPUTY ATTORNEY GENERAL.
Office the Attorney General for the State of New Jersey
R.J. Hughes Justice Complex
PO Box 112
Trenton, New Jersey 08625
Attorneys for Defendants William Edwards and Eric Gorecke

**SIMANDLE, Chief District Judge:**

**I.   INTRODUCTION**

    This matter comes before the Court on Defendants William

Edwards' and Eric Gorecke's Motion for Summary Judgment. Docket

Entry 76. Plaintiff James Barnes opposes the motion. Docket

Entry 85. The motion is being considered on the papers pursuant

to Fed. R. Civ. P. 78(b). For the reasons set forth below, the

motion is granted as to the false arrest and retaliatory arrest claims, and the motion is otherwise denied.

## II.   BACKGROUND

### A. Procedural History

Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 on or about June 30, 2013, alleging Defendants assaulted him and had been abusing their positions as his parole officers to extort $100 a month from him since September 2012. Complaint, Docket Entry 1. The Court administratively terminated the complaint on August 16, 2013, for failure to submit a complete *in forma pauperis* application and directed Plaintiff to resubmit an application. Docket Entry 3. Plaintiff submitted a new application, and the Court reopened the matter for review and permitted the complaint to proceed on November 4, 2013. Docket Entry 9.

Discovery commenced, and on October 21, 2014, Magistrate Judge Karen M. Williams ordered the appointment of counsel for Plaintiff. Counsel entered an appearance and filed an amended complaint on January 9, 2015, Docket Entry 64, and a corrected version on January 15, 2015. Corrected Amended Complaint ("Amended Complaint"), Docket Entry 65. Defendants filed the instant motion for summary judgment on November 13, 2015. Motion for Summary Judgment, Docket Entry 76. Plaintiff filed

opposition to the motion on January 5, 2016. Plaintiff's
Opposition, Docket Entry 85.

**B. Statement of Facts**

*1. Allegations in Pleadings*

Plaintiff's Amended Complaint asserts claims under the
First, Fourth, and Fourteenth Amendments, 42 U.S.C. § 1983, the
New Jersey State Constitution, the New Jersey Civil Rights Act,
N.J. STAT. ANN. § 10:6-2 ("NJ CRA"), and the New Jersey Tort
Claims Act, N.J. STAT. ANN. § 59:1-1 et seq. ("NJ TCA").

Plaintiff was released from prison and began serving a
five-year period of parole on June 16, 2012. Amended Complaint ¶
8. He moved in with his fiancée in Woodbine, New Jersey.[1] *Id.*
Shortly after Plaintiff's release, his assigned parole officer,
William Edwards, told Plaintiff that if Plaintiff paid him $100
per month, he would "issue favorable parole reports which would
allow [Plaintiff's] parole to be reduced by two years." *Id.* ¶¶
9-10. Plaintiff began paying Officer Edwards $100 per month out
of funds he received through public assistance programs. *Id.* ¶¶
11-12.

According, to Plaintiff's Amended Complaint, Officer
Edwards and his partner, Eric Gorecke, visited Plaintiff's home
once a month in order to ensure Plaintiff was complying with the

---

[1] Plaintiff and his fiancée married in March 2013. *Id.* ¶ 8.

3

terms of parole. *Id.* ¶¶ 9, 11. During their visits, Officer Edwards would escort Plaintiff into a bathroom, purportedly to conduct a urine drug test. *Id.* ¶ 11. Instead, Plaintiff would pay Officer Edwards $100. Officer Gorecke was never present during the exchange of money. *Id.* ¶ 14. Plaintiff continued to pay Officer Edwards for eight months, with his last payment taking place in April 2013. *Id.* ¶ 14.

On May 2, 2013, Officers Edwards and Gorecke arrived at Plaintiff's home between 9:00 and 10:00 in the morning. *Id.* ¶ 15. As Plaintiff was not expecting them until later in the day, he called his wife and kept her on speakerphone. *Id.* ¶ 16. Officer Edwards directed Plaintiff to accompany him to the bathroom for a urine test, and Plaintiff complied with the directive. *Id.* ¶¶ 18-19. Once they entered the bathroom, located on the second floor, Officer Edwards demanded $100 from Plaintiff. *Id.* ¶¶ 18-20. Plaintiff refused to pay the money and told Officer Edwards he was going to report the payments to the authorities and his wife. *Id.* ¶ 21. Following Plaintiff's refusal to pay, Officer Edwards announced he was arresting Plaintiff for testing positive for cocaine. *Id.* ¶¶ 22, 25. Officer Edwards later claimed Plaintiff had admitted to using cocaine and had signed a form to that effect, but Plaintiff denies having done so. *Id.* ¶¶ 25-26.

4

Plaintiff thereafter left the bathroom and continued to talk with his wife on his cellphone. *Id.* ¶ 27. He told her he was being arrested. *Id.* While Plaintiff was on the phone, Officer Edwards struck Plaintiff's wrist with his handcuffs in order to knock the phone out of Plaintiff's hands. *Id.* ¶ 28. Plaintiff dropped the phone and fell face-down onto his bed. *Id.* ¶ 29.

Plaintiff alleges Officer Edwards then climbed on top of Plaintiff, straddled Plaintiff's back, and punched Plaintiff in his lower back and head, resulting in pain and bruising. *Id.* ¶ 30. Although Plaintiff was not resisting or threatening the officers, Officer Gorecke grabbed Plaintiff's legs, which were hanging over the edge of the bed, and pulled him onto the hardwood floor. *Id.* ¶¶ 31-32. He then proceeded to kick Plaintiff in the back. *Id.* ¶ 32. The officers handcuffed Plaintiff and dragged him down the stairs to the car. *Id.* ¶ 33.

## B. Defendants' Statement of Material Facts

Defendants assert that as part of Plaintiff's five-year term of mandatory parole supervision, he was required to refrain from the use, possession, or distribution of controlled dangerous substances and to participate and complete the Community Resource Center Program ("CRC"). Defendants' Statement of Material Facts ("DSOF"), Docket Entry 76-7 ¶¶ 2-4. Plaintiff admitted to having used cocaine between December 24, 2012 and

January 8, 2013. *Id.* ¶ 6; Declaration of Dina Rogers ("Rogers Dec."), Docket Entry 76-2 at 21. He also admitted to having used cocaine on March 14, 2013. DSOF ¶ 7; Rogers Dec. at 18.

Officers Edwards and Gorecke visited Plaintiff at home on May 2, 2013. DSOF ¶ 8. Officer Edwards spoke with his supervisor Sergeant Tina Wheaton before arriving at Plaintiff's, at which time she instructed Officer Edwards to arrest Plaintiff if he continued to test positive for prohibited substances. *Id.* ¶ 9. Officer Edwards accompanied Plaintiff into the bathroom for a urine screening, which ended in a positive result for cocaine. *Id.* ¶ 10. Plaintiff then admitted he had used cocaine during a visit to Newark on April 30, 2013. *Id.* ¶ 11. Pursuant to Sergeant Wheaton's instructions, Officer Edwards told Plaintiff he was under arrest for his repeated use of cocaine and failure to complete the CRC program. *Id.* ¶ 12.

Plaintiff did not submit to the arrest and instead exited the bathroom, picked up his cellphone, and began talking with his wife. *Id.* ¶ 13. Officer Edwards ordered Plaintiff to place his hands behind his back; however, Plaintiff informed Officer Edwards that he was not going anywhere until his wife came home. *Id.* ¶ 14. Officer Edwards attempted to restrain Plaintiff, but Plaintiff pulled away, causing both of them to fall onto Plaintiff's bed. *Id.* ¶¶ 15-16. Officer Edwards straddled Plaintiff's back in order to handcuff him. He was able to place

6

the cuffs around Plaintiff's right wrist, but could not cuff the left hand because Plaintiff was holding the phone in that hand. *Id.* ¶¶ 17-18. Officer Gorecke entered the bedroom and restrained Plaintiff's legs to stop Plaintiff from moving his legs. *Id.* ¶ 19. After a few seconds, Officer Gorecke released Plaintiff's legs and cuffed Plaintiff's left hand. *Id.* ¶¶ 19-20. They escorted Plaintiff to their car without incident. *Id.* ¶ 22. Plaintiff never indicated he was in any kind of pain. *Id.* ¶¶ 23-24.

Intake Officer Raymond Hammer, Nurse Lori Ross, and Dr. Henry Yu evaluated Plaintiff upon his arrival at Cape May Correctional Center ("CMCC"). *Id.* ¶ 25. Plaintiff reported to Nurse Ross that he had bruises and pain on his left side and back of his head, *id.* ¶ 28, but none of the staff who evaluated Plaintiff noticed any injuries on him. *Id.* ¶¶ 26-29; Rogers Dec. Exhibit E, Docket Entry 78 at 63. Plaintiff's chest was x-rayed a few days later to check for tuberculosis, and no cracked or broken ribs were detected. DSOF ¶ 30. Plaintiff did not tell Dr. Yu that he had been assaulted, nor did Dr. Yu observe any injuries consistent with an assault. *Id.* ¶ 32.

On May 21, 2013, Plaintiff appeared before a hearing officer for a parole revocation hearing. *Id.* ¶ 33. The hearing officer "noted that Barnes was charged with violating conditions which required him to refrain from the use, possession or

7

distribution of a controlled dangerous substance, and to participate in and successfully complete the [CRC]." *Id.* ¶ 34. After considering the evidence, which included testimony from Officers Edwards and Gorecke as well as documentary evidence of prior admissions of cocaine use, the hearing officer found Plaintiff violated the terms of his parole by using cocaine and failing to attend CRC as scheduled. *Id.* ¶ 35. She recommended the revocation of Plaintiff's parole. *Id.* A Parole Board panel adopted the hearing officer's findings and recommendation, formally revoking Plaintiff's parole on July 3, 2013. *Id.* ¶ 36. Plaintiff appealed, and the full Parole Board affirmed the panel's decision. *Id.* ¶¶ 37-38. Plaintiff did not seek review of the decision in the New Jersey Superior Court Appellate Division. *Id.* ¶ 39.

Plaintiff had written to New Jersey Governor Chris Christie prior to the formal revocation of his parole alleging that Officers Edwards and Gorecke had been extorting him for $100 a month in exchange for a shortened parole term. *Id.* ¶ 40. The letter also alleged that the officers had assaulted him on the morning of his arrest. *Id.* ¶ 41. Specifically, Plaintiff alleged that "after he and Edwards fell on to the bed, Edwards punched him in the back of the head and in the kidney area several times, and then, when he fell to the floor, Gorecke kicked him in the ribs several times." *Id.* ¶ 42. He also stated that when

his wife returned home, she found the bedroom "'tore up very bad'" and took pictures of the damage. *Id.* ¶ 44.

Plaintiff's allegations were referred to the Parole Board's Office of Professional Standards, and Senior Investigator Mark Higginbotham conducted the investigation into whether the officers received $100 per month from Plaintiff, whether they used excessive force during Plaintiff's arrest, and whether Officer Edwards falsely reported conducting a urine test resulting in the positive cocaine result on May 2, 2013. *Id.* ¶¶ 45-46. Investigator Higginbotham interviewed both officers, Plaintiff, Plaintiff's wife, Dr. Yu, Nurse Ross, and other CMCC corrections officers during his investigation. *Id.* ¶¶ 47-48.

During his interview, Plaintiff denied Officer Gorecke was involved in the extortion and stated he had only been paying Officer Edwards. *Id.* ¶ 49. Plaintiff did not believe Officer Gorecke knew anything about Officer Edwards' alleged actions. *Id.* According to Investigator Higginbotham, Plaintiff's wife made statements that were inconsistent with Plaintiff's version of events. *Id.* ¶¶ 52-54. Investigator Higginbotham ultimately concluded Plaintiff's allegations were unfounded due to Plaintiff's changing story and lack of proof. *Id.* ¶¶ 55-61; Rogers Dec. Exhibit E at 16-17.

## C. Plaintiff's Statement of Material Facts

Plaintiff admits that he is subject to a five-year period of parole supervision as part of his sentence. Plaintiff's Statement of Facts ("PSOF"), Docket Entry 85-22 ¶ 1. He disputes Defendants' interpretation of the Conditions of Supervision, Plaintiff's Response to Defendants' Facts ("PR"), Docket Entry 85-21 ¶¶ 4-5, but agrees he was required to submit to random drug and alcohol testing, PSOF ¶ 16. He admits he signed an Admission of Use Form on January 9, 2013, in which he admitted to using cocaine on December 24, 2012 and January 8, 2013. *Id.* ¶¶ 23, 26. He later received a Notice of Imposition of Special Condition form requiring him to "'enroll in, comply with the conditions of, and successfully complete the STEPS treatment program.'" *Id.* ¶ 28. He was discharged from the STEPS program after forty-five days due to a medical condition, *id.* ¶ 31, and was thereafter referred to the CRC on March 14, 2013, *id.* ¶ 34. He tested positive for cocaine, but denied any use. *Id.* ¶ 35. Laboratory testing confirmed cocaine use, *id.* ¶ 38, and Plaintiff was referred to inpatient treatment until he was discharged on March 26, 2013 due to a seizure, *id.* ¶¶ 40-42.

Plaintiff was scheduled for an intake interview with Cape Counseling on April 30, 2013; however, he did not make that appointment because he went to Newark to check on his daughter after she was involved in a shooting. *Id.* ¶¶ 43, 45. Officer

Edwards received multiple calls from Plaintiff's wife regarding the counseling appointment and became suspicious of Plaintiff's activities. *Id.* ¶ 47. On May 2, 2013, Sergeant Wheaton told Officer Edwards to take Plaintiff into custody if Plaintiff tested positive. *Id.* ¶ 48.

Plaintiff agrees that Officers Edwards and Gorecke arrived at his home early on May 2, 2013, and that he was on the phone with his wife when they arrived. *Id.* ¶¶ 53-55. He also agrees that Officer Edwards directed him to provide a urine sample and that they went into the bathroom. *Id.* ¶¶ 56-58; Barnes Deposition Transcript, Docket Entry 85-4 at 19:12-19. His retelling of the events diverges from Defendants' version after they enter the bathroom.

Plaintiff states that after he and Officer Edwards entered Plaintiff's bathroom, Officer Edwards demanded Plaintiff pay him $100. *Id.* ¶ 60. Officer Edwards had been "demand[ing] $100 a month from the Plaintiff in return for a favorable parole report and the promise to cut the length of [Plaintiff's] mandatory supervision by two years." *Id.* ¶ 61. Plaintiff refused to pay any more money and told Officer Edwards he was going to report him to the authorities and Plaintiff's wife. *Id.* ¶¶ 62-63. He refused to give Officer Edwards a urine sample. *Id.* ¶ 63.

According to Plaintiff's version, in response to Plaintiff's refusal, Officer Edwards indicated he was "'locking

11

[him] up for a dirty urine.'" *Id.* ¶ 64. He then instructed Plaintiff to get his medication. *Id.* ¶ 67. As Plaintiff went to get his medicine, he picked up his phone and told his wife what was happening. *Id.* ¶ 68. Officer Edwards then grabbed Plaintiff's wrist. *Id.* ¶ 70. Plaintiff continued towards his bedroom, at which time Officer Edwards swung his handcuffs at Plaintiff. *Id.* ¶ 75. Plaintiff fell on the bed, and Officer Edwards jumped onto Plaintiff's back and punched Plaintiff in his head and lower back. *Id.* ¶¶ 72, 75-78.

Plaintiff states that once Officer Gorecke entered the room, he grabbed Plaintiff's legs, pulled him onto the floor, and began kicking him instead of stopping Officer Edwards from assaulting Plaintiff. *Id.* ¶¶ 81-83. Plaintiff's wife was listening to Plaintiff's yells over the phone during this time. *Id.* ¶ 84. The officers eventually handcuffed Plaintiff and dragged him down the stairs, causing his shins to bleed. *Id.* ¶¶ 85-87. At no time on that date did Plaintiff admit to having used cocaine, nor did he provide a urine sample. *Id.* ¶ 88. Plaintiff asserts Defendants lied to Sergeant Wheaton about the drug test, subsequent arrest, and use of force. *Id.* ¶¶ 102-03. Defendants did not complete a Use of Force form, *id.* ¶ 101, nor did they ask Plaintiff to sign another Admission of Use Form to replace the one they allegedly left at Plaintiff's home, *id.* ¶ 107. Defendants did not preserve the urine sample. *Id.* ¶ 96.

12

Upon arrival at CCMC, Plaintiff requested medical attention for the injuries sustained during the arrest. *Id.* ¶ 118. He allegedly told the evaluating officers that his shins were bleeding and that his back and head hurt. *Id.* Nurse Ross did not attend Plaintiff until hours later, and she did not thoroughly evaluate him when she did arrive. *Id.* ¶¶ 119, 121. The records indicate Plaintiff had pain in his left side and head. *Id.* ¶ 120; Declaration of John Kahn ("Kahn Dec.") Attachment 16, Docket Entry 85-17. Dr. Yu did not physically examine Plaintiff. PSOF ¶ 122. Plaintiff claims he continues to suffer headaches and back pain because of the assault. *Id.* ¶ 123; Kahn Dec. Attachment 17, Docket Entry 85-18.

Plaintiff admits he appeared before Hearing Officer Carla Shabazz on May 21, 2013, for a violation hearing. PSOF ¶ 128. He disputes that she made any findings regarding the events of May 2, 2013, and asserts her revocation recommendation was based on his admission of use from January 9, 2013 and failure to attend a counseling intake session on April 30, 2013. *Id.* ¶¶ 134-37.

## III. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.' In making that determination, a court must view the evidence 'in the light most

favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. Pro. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV. ANALYSIS

### A. Retaliation and False Arrest

Defendants argue Plaintiff's false arrest and retaliatory arrest claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that before a § 1983 plaintiff may "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486-87. The Third Circuit held *Heck* applied to suits alleging unlawful revocation of parole in which "success on the § 1983 claim would

necessarily demonstrate the invalidity of the Parole Board's decision." *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006).

A successful false arrest claim does not necessarily invalidate a conviction. *See Woodham v. Dubas,* 256 F. App'x 571, 576 (3d Cir. 2007) ("Under some circumstances, a false arrest claim may proceed in an action under 42 U.S.C. § 1983 despite a valid conviction."); *Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998) ("[A] conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest."). The allegations forming the basis of Plaintiff's false arrest claim are that Officers Edwards and Gorecke falsely claimed Plaintiff had admitted to using cocaine after testing positive, and that the arrest was done out of retaliation for Plaintiff's threat to report Officer Edwards' alleged extortion. In recommending the revocation of Plaintiff's parole, the Hearing Officer Shabazz did not address either of these contentions. She instead based her decision on Plaintiff's admission of use from January 9, 2013, and his failure to attend counseling on April 30, 2013. Hearing Summary, Kahn Dec. Attachment 18, Docket Entry 85-19 at 4. Even if Plaintiff did not test positive for cocaine on May 2, 2013, the revocation of the parole is not necessarily invalidated as that test was not a basis of the hearing officer's decision. If, however, there was

15

probable cause to arrest Plaintiff for his parole violations of January 9 (that he used cocaine) and April 30 (that he failed to attend counseling), then his arrest on May cannot be said to be false.

A claim for false arrest cannot survive if probable cause exists "as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). "In determining whether probable cause existed at the time of an arrest, the 'arresting officer's state of mind' and the charges 'actually invoked by the arresting officer' are irrelevant." *Rankines v. Meyrick*, No. 14-1842, 2016 WL 545134, at *3 (D.N.J. Feb. 10, 2016) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006)); *see also Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) ("[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with . . . ."). Thus, even accepting Plaintiff's version of events at his home as true, his false arrest claim fails as a matter of law if Defendants had probable cause to arrest Plaintiff for any reason.

Whether there was probable cause at the time of arrest is normally a jury question. *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). In this particular case however, *Heck* and *Williams* preclude Plaintiff from contesting

16

the findings that he used cocaine on January 9, 2013 and failed to attend his required counseling session on April 30, 2013, because the hearing officer found those actions constituted serious and persistent violations of the terms of Plaintiff's parole. Hearing Summary at 4. Thus, a jury finding that there was no probable cause at the time of his arrest for any offense would call into question the validity of his parole revocation. Plaintiff cannot make this argument as a matter of law. Therefore, summary judgment is granted upon Plaintiff's false arrest claim.

It does not appear that a retaliatory arrest claim may proceed where probable cause exists. *See Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause . . . ."); *Primrose v. Mellott*, 541 F. App'x 177, 180 n.2(3d Cir. 2013) (noting "[w]e have not decided whether the logic of *Hartman*[2] applies to retaliatory arrest claims . . . ."); *see also Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 829 (3d Cir. 2011) (holding that because there was probable cause to arrest Pittman, his claim of a retaliatory arrest does not present a genuine issue for

---

[2] *Hartman v. Moore*, 547 U.S. 250 (2006) (holding a plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges).

trial); *Yazid-Mazin v. McCormick*, No. 13-5783, 2013 WL 5758716, at *5 (D.N.J. Oct. 24, 2013) (dismissing retaliatory arrest claim under 28 U.S.C. § 1915 for failure to state claim as plaintiff "cannot in any event prevail on this claim without establishing the absence of probable cause"). Here, as explained above, Plaintiff cannot establish lack of probable cause to arrest for violation of parole. His revocation was adjudicated and his parole was revoked based upon his admitted prior cocaine use and failure to attend counseling. Plaintiff has not challenged his revocation of parole on these grounds. No reasonable jury could find lack of probable cause to arrest him on May 2, 2013, and Plaintiff is unable to prove the essential element for a retaliatory arrest, namely, lack of probable cause. The Court has found no case recognizing a claim for retaliatory arrest in the face of probable cause to arrest. Accordingly, the Court also grants summary judgment against Plaintiff's claim of retaliatory arrest.

## B. Qualified Immunity

Defendants next argue they are entitled to summary judgment on the excessive force and failure to intervene claims under the doctrine of qualified immunity.[3] As there are significant factual

---

[3] Although the heading of Defendants' arguments states qualified immunity should be applied to "all federal constitutional claims," Defendants' Brief, Docket Entry 76-1 at 25, only the

questions regarding Defendants' conduct during the arrest, Defendants are not entitled to qualified immunity on those claims at this time.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (internal citation and quotation marks omitted). The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original).

"The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866 (internal citation and quotation marks omitted). The Supreme Court has held that a right is clearly established when the right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor*, 135 S. Ct. at 2044 (internal citation and quotation marks omitted). There does

---

excessive force and failure to intervene claims were briefed. The Court's analysis is therefore limited to those claims.

not need to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.; see also Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016), *as amended* (Mar. 21, 2016) (citing *Taylor* for proposition that "a 'robust consensus of cases of persuasive authority' in the Court of Appeals could clearly establish a right for purposes of qualified immunity"). "Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006).

### 1. Excessive Force

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan*, 134 S. Ct. at 1865 (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "The inquiry into whether this right was violated requires a balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* at 1865-66 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This balancing requires an examination of the "facts and circumstances of each particular case, including the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Plaintiff has raised more than just "some metaphysical doubt" as to the circumstances of his arrest and the resulting injuries, if in fact there were any. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citation and quotation marks omitted). The record taken as a whole, including the deposition testimony of the parties and witnesses and Plaintiff's medical records, could lead a reasonable jury to find in Plaintiff's favor. The Court must therefore adopt Plaintiff's version of events for summary judgment purposes. *See Tolan*, 134 S. Ct. at 1866 (noting "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment" in qualified immunity analysis).

Under Plaintiff's version of events, a reasonable jury could conclude his Fourth Amendment rights were violated in this particular instance. Plaintiff was charged with violating the terms of his parole, allegedly for continued drug use. There was no allegation that Plaintiff had committed a violent offense. Both parties agree that Plaintiff was unarmed, holding only a cellphone. PSOF ¶ 68; DSOF ¶¶ 13-14. According to Plaintiff, he was not resisting or attempting to flee when Officer Edwards began striking Plaintiff's wrist with his handcuffs; he was only

attempting to follow Officer Edwards' direction to get his medication and was telling his wife he was about to be taken to the county jail. Barnes Deposition Transcript 21:7-18. Plaintiff then fell on the bed, and Officer Edwards jumped on top of Plaintiff and began striking Plaintiff in the head and lower back. *Id.* at 21:16-20. Officer Gorecke then entered the room, grabbed Plaintiff's legs, pulled him to the floor, and kicked Plaintiff in his lower back two to three times. *Id.* at 24:16-25. Both officers then proceeded to handcuff Plaintiff and drag him down the stairs. *Id.* at 27:7-12. Taking Plaintiff's testimony as true, Plaintiff posed no threat to the parole officers during the alleged beating, and there was no risk of his flight as Officer Edwards was sitting on top of him. A reasonable jury could find that the degree of force allegedly used by Officers Edwards and Gorecke served no legitimate law enforcement purpose and was excessive.

Furthermore, a reasonable officer would have understood at the time of Plaintiff's May 2, 2013 arrest that the gratuitous use of force against an arrestee who has already been restrained and is not resisting arrest violates the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Green v. N.J. State Police*, 246 F. App'x 158 (3d Cir. 2007) (holding a reasonable officer would know it would be excessive to hit unarmed arrestee in head and to kick him when he was already restrained); *Couden*

*v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (finding force excessive where officer had knee on plaintiff's back and plaintiff was not "resisting arrest or attempting to flee" at the time force was used); *Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004) (holding right to be free from excessive force in the course of handcuffing suspect was clearly established). Construing the evidence in the light most favorable to Plaintiff, a reasonable officer in 2013 would know that striking an unarmed man's wrist with handcuffs, throwing him onto a bed, straddling him, punching his head and lower back, and kicking him while he was not resisting was unlawful. *See Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued.")

Because resolution of these issues implicates "disputes over facts that might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), summary judgment on qualified immunity grounds is not appropriate at this time. A reasonable officer would clearly have known that the excessive use of force in making an arrest, under the facts most favorable to Plaintiff, would violate the Constitution's Fourth Amendment.

   *2. Failure to Intervene*

23

Defendants are likewise not entitled to qualified immunity for failing to prevent each other from using unreasonable force against Plaintiff. To establish a Fourth Amendment violation for failure to intervene, Plaintiff must establish that: (1) the officer failed or refused to intervene when a constitutional violation took place in his presence or with his knowledge; and (2) there was a "realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). As applied to this case, the Court must determine whether it would be clear to a reasonable officer who observes a fellow officer using excessive force by punching or kicking an unarmed, non-resisting suspect in the course of an arrest, that failing to intervene would constitute a violation of the suspect's constitutional rights.

As set forth above, a reasonable jury could conclude Plaintiff's Fourth Amendment rights were violated during his arrest by the use of excessive force. Both parties agree that Officers Edwards and Gorecke were both present and assisted in arresting Plaintiff. DSOF ¶¶ 17-20; PSOF ¶¶ 70-82. A reasonable jury could therefore conclude each officer had a realistic opportunity to intervene.

The Court further finds that it would have been clear to a reasonable officer in 2013 that when a fellow officer employs excessive force during an arrest, failing to intervene would be

an additional violation of the suspect's constitutional rights. "Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force." *Smith,* 293 F.3d at 650; *see also Garbacik v. Janson,* 111 F. App'x. 91, 94 (3d Cir. 2004) (citing courts of appeals' cases finding duty of officer to prevent the use of excessive force by another officer). Defendants are therefore not entitled to qualified immunity on the failure to intervene claim either.[4]

## C. Assault and Battery

Defendants argue they are entitled to summary judgment on Plaintiff's state law claims as the NJ TCA immunizes public officials from pain and suffering damage claims.

The NJ TCA provides in relevant part:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

---

[4] Defendants also argue they are entitled to qualified immunity on Plaintiff's NJ CRA claims. The analysis of the qualified immunity defense under the NJ CRA is the same as claims brought under § 1983. *Morillo v. Torres*, 117 A.3d 1206, 1213 (N.J. 2015) (citing *Ramos v. Flowers*, 56 A.3d 869 (N.J. Sup. Ct. App. Div. 2012)). Therefore, the Court must deny summary judgment on qualified immunity grounds for the same reasons as it did for Plaintiff's § 1983 claims.

N.J. STAT. ANN. § 59:9-2(d). This limitation under New Jersey law, known as the "verbal threshold," requires plaintiffs to show "'(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial'" before they may recover pain and suffering damages from a public entity or employee. *Knowles v. Mantua Twp. Soccer Ass'n*, 823 A.2d 26, 29 (N.J. 2003) (quoting *Gilhooley v. Cnty. of Union*, 753 A.2d 1137, 1142 (N.J. 2000)).

However, the limitations on recovery do not apply if a public employee is found to have acted with actual malice or committed willful misconduct. *Toto v. Ensuar*, 952 A.2d 463 (N.J. 2008). In those instances, plaintiffs may recover "the full measure of damages applicable to a person in the private sector . . . ." N.J. STAT. ANN. § 59:3-14(b); *see also Leang v. Jersey City Bd. of Educ.*, 944 A.2d 675 (N.J. Sup. Ct. App. Div. 2008), *aff'd in part, rev'd in part* 969 A.2d 1097 (N.J. 2009). The NJ TCA does not define "willful misconduct," but the New Jersey Supreme Court has noted "[a]lthough willful misconduct need not involve the actual intent to cause harm, there must be some knowledge that the act is wrongful." *Fielder v. Stonack*, 661 A.2d 231, 242 (N.J. 1995).

As previously noted, the record indicates there are genuine disputed issues of fact concerning the circumstances of Plaintiff's arrest. Giving Plaintiff the benefit of all

reasonable inferences, a jury could conclude that Defendants engaged in willful misconduct by using excessive force against Plaintiff. In that instance, the verbal threshold would not be applicable. As a jury must resolve the factual questions, Defendants are not entitled to summary judgment on the damages question at this time.

## V. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted upon Plaintiff's claims for false arrest and retaliatory arrest, and the motion is otherwise denied.

An accompanying Order will be entered.


__June 24, 2016___                    __s/ Jerome B. Simandle__
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge

27